*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0036P (6th Cir.)
File Name: 00a0036p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FREDERICK WHITE,
    *Petitioner-Appellant,*

        *v.*           No. 97-4066

JAMES SCHOTTEN, Warden,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 95-02801—Patricia A. Gaughan, District Judge.

Argued: June 10, 1999

Decided and Filed: January 26, 2000

Before: KEITH, DAUGHTREY, and MOORE, Circuit
Judges.

---

### COUNSEL

**ARGUED:** Kort W. Gatterdam, PUBLIC DEFENDER'S
OFFICE, OHIO PUBLIC DEFENDER COMMISSION,
Columbus, Ohio, for Appellant. Stuart W. Harris, OFFICE
OF THE ATTORNEY GENERAL, CORRECTIONS
LITIGATION SECTION, Columbus, Ohio, for Appellee.
**ON BRIEF:** Kort W. Gatterdam, PUBLIC DEFENDER'S

1

OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Stuart W. Harris, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. Petitioner Frederick White appeals the district court's dismissal of his habeas corpus petition, filed pursuant to 28 U.S.C. § 2254. In the petition, White challenges his 1989 state convictions for aggravated murder with a firearm specification, felonious assault with a firearm specification, and possession of a weapon under disability, alleging that his appellate counsel rendered constitutionally ineffective assistance. The district court dismissed the petition on the ground of procedural default, finding that the petitioner had failed to raise the issue of ineffective assistance of counsel within the time limit set by Ohio App. R. 26(B). The district court further found that White was unable to show cause and prejudice for the default.

Under applicable Ohio law, a claim of ineffective assistance is raised by application to reopen the direct appeal. Rule 26(B) provides that the application must be filed within 90 days "from journalization of the appellate judgment." In this case, the petitioner's attorney filed the application some three years after the 90-day period had run. Because an application for reopening the direct appeal in Ohio is part of the direct appeal process, and because a defendant has a right to effective assistance of counsel during that stage of proceedings, we conclude that the petitioner in this case is able to show cause for his procedural default, i.e., counsel's failure to file a timely application for reopening. However, the issue of whether the petitioner was prejudiced by the alleged constitutional error was not addressed by the district court and is not adequately briefed before us. Hence, we must remand the case to the district court to make that

cause to excuse any failure to comply with the procedural requirements contained in Ohio Rule of Appellate Procedure 26(B). Accordingly, we remand to the district court to consider whether the petitioner has established that he was actually prejudiced by the alleged constitutional error and, if so, to review his constitutional claims on their merits.

However, as previously stated, we conclude that the petitioner has shown cause for his default, and if he is able to demonstrate that he was actually prejudiced by the alleged constitutional error, he is entitled to federal review of the merits of his constitutional claims.  Because the issue of prejudice is not adequately briefed, we remand for the district court to consider the issue, keeping in mind the following guidelines for such analysis articulated in *Maupin*, which the court gleaned from various Supreme Court cases:  (1) "the prejudice that must be shown must be a result of the alleged constitutional violation and not a result of the trial counsel's failure to meet state procedural guidelines;" (2) "the burden is on the petitioner to show that he was [actually] prejudiced by the alleged constitutional error..., not merely a possibility of prejudice;" and (3) "in analyzing a petitioner's contention of prejudice, the court should assume that the petitioner has stated a meritorious constitutional claim." **7**85 F.2d at 139 (citations omitted).  Of course, if the district court finds that the petitioner has established prejudice, it should proceed to decide the merits of his constitutional claims.

Finally, we note the petitioner's argument that Rule 26(B) is unconstitutional as applied in Ohio because it deprives indigent, incarcerated, uncounseled inmates due process and equal protection of the laws.  These claims were not raised in the district court, however.  "When a party fails to present an argument to the district court, we have discretion to resolve the issue only where the proper resolution is beyond any doubt, or where injustice might otherwise result."  *See Enertech Elec., Inc. v. Mahoning County Comm'r*, 85 F.3d 257, 261 (6th Cir. 1996).  We decline, in this instance, to treat these issues as a matter of initial review.

### *CONCLUSION*

We conclude that Ohio criminal defendants have a federal constitutional right to effective assistance of counsel during an application for reopening and that the petitioner's counsel in this case was constitutionally ineffective in failing to file such an application in a timely fashion, thus constituting

determination and, if it finds that the petitioner has established prejudice, to review the petitioner's constitutional claims on their merits.

### *PROCEDURAL AND FACTUAL BACKGROUND*

The convictions underlying Frederick White's federal petition for habeas corpus arise from the shooting death of his former wife, Kimberly Hawkins White, as she left work. The Ohio Court of Appeals, affirming the petitioner's convictions and sentence on direct appeal, stated the facts of this case as follows:

[Kimberly Hawkins] White worked as a nurse's assistant at the Mount St. Joseph Nursing Home.  At approximately 7:00 a.m., November 5, 1988, White left the nursing home with Jacqueline Glenn and walked toward the van of Richard Gibson, a friend of Glenn's, who was to drive the women home.  Glenn testified she entered the van through the front passenger door and, as she began to unlock the rear sliding door, White screamed and pushed Glenn into the van.  The women fell onto the floor between the seats.  Glenn heard an initial shot and heard White shout, "Wait, Rick, wait." (Tr. 110).  According to Glenn, this shot hit White in the leg.  Glenn told the jury White's assailant entered the van and again shot White, who stated "Oh, Rick." (Tr. 113). Glenn, who received powder burns during the shooting, testified she heard three to four shots.  She also observed the man's face as he left the van.

In her statement to police immediately after the shooting, Glenn indicated she did not see the man who shot White, nor did this statement include White's identification of her assailant.  Two days later, Glenn went to the police station to amplify her initial statement.  She then told police of White's references to her assailant as "Rick" and described the man's clothing.  Glenn subsequently selected the defendant's picture from an array of five photographs and identified him as the man who shot White.

Richard Gibson, the driver of the van, corroborated Glenn's testimony but was unable to identify the assailant. Gibson told the jury that, as White lay wounded in the van, she stated her husband fired the shots. Euclid police officer Jeffrey Swider responded to the nursing home minutes after the shooting. Swider testified he asked White who shot her and White responded, "My husband." (Tr. 180). Sister Mary Raphael, a nun at the nursing home, also heard White identify her husband as the assailant. White later died in the hospital.

Cuyahoga County Coroner Elizabeth Balraj performed an autopsy on White's body. Her examination revealed a gunshot wound to the left leg as well as an abdominal wound with a perforation of the aorta. Balraj opined White hemorrhaged to death. Barbara Campbell, a member of the coroner's trace evidence department, testified that gun shot residue on White's palms indicated the weapon was fired in close proximity to White.

Kathy Kozel, an assistant at Mount St. Joseph, testified that, as she arrived for work, she observed a man standing outside the nursing home approximately ten minutes before the shooting. Kozel stated she was 12-13 feet from the man and that she looked at his face. Kozel did not see the man fire a gun. Three months later, Kozel selected the defendant's photo from an array as the man she saw outside the nursing home.

Charon Hawkins, the victim's daughter, testified the defendant telephoned her mother the evening before she was killed. According to Hawkins, her mother twice refused to speak with the defendant, who finally threatened "to do something bad" to her mother. (Tr. 235). The daughter also averred the defendant beat her mother many times.

Vivian Faylor Jeff, a counselor at the Cuyahoga County Witness & Family Violence Center, testified she met with White on six to eight occasions and that White was

to entertain the claim. *See id*. In analyzing such a claim, the inquiry is a narrow one, where the petitioner must "point to a constitutional violation that probably resulted in the conviction of one who was actually innocent." *Ritchie v. Eberhart*, 11 F.3d. 587, 593 (6th Cir.1993); *accord Schlup v. Delo*, 513 U.S. 298, 321 (1997); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). The petitioner argues that the following evidence shows that he is actually innocent:

> There were two eyewitnesses to the crime. Richard Gibson testified he could not identify the perpetrator. Jackie Glenn identified Mr. White but admitted she told the police after the incident that she did not see the assailant because she was pushed aside, out of the way, and had her head down. The State's evidence is contradicted by the evidence presented by White. Mr. White produced credible evidence at his trial that he was in Columbus, Ohio at the time of his ex-wife's murder. In addition to the alibi testimony from his wife, Mr. White introduced testimony from two disinterested witnesses who testified to seeing Mr. White the night before and the morning of the murder in Columbus, Ohio. . . . The State of Ohio convicted Mr. White based upon his past conduct, bad character, hearsay and prosecutorial misconduct.

We conclude that the petitioner has not made a colorable showing of actual innocence under the *Carrier/Schlup* standard. As the petitioner acknowledges, this evidence was presented to the jury, which chose to credit the state's evidence over that offered by the petitioner. Although we might agree with the Ohio Court of Appeals's assessment that the prosecutor violated the rules of evidence in this case, there is no basis for us to second-guess the jury's credibility determination and its resulting verdict. Accordingly, because a miscarriage of justice will not result from the court's failure to review this claim, it does not excuse the petitioner's failure to comply with state procedural rules. *See Ritchie*, 11 F.3d at 593.

commensurate right to effective assistance from that counsel. However, as this court's decision in *Manning v. Alexander*, 912 F.2d 878, 882 (6th Cir. 1990), made clear, Ohio law does not consider an attack on the adequacy of appellate counsel to be proper in a state habeas proceeding. *See Manning*, 912 F.2d at 882 (citing *Manning v. Alexander*, 553 N.E.2d 264 (Ohio 1990); *In re: Petition of Brown*, 551 N.E.2d 954 (1990)). Furthermore, *Murnahan* emphatically holds that any such attack cannot be considered part of an Ohio post-conviction matter.

If the application for delayed reconsideration is neither part of a state habeas nor state post-conviction proceeding, it must be a continuation of activities related to the direct appeal itself. Because a defendant is entitled to effective assistance of counsel on direct appeal, *see Evitts v. Lucey*, 469 U.S. 387, 396 (1985), such an individual must be accorded effective assistance of counsel throughout *all* phases of that stage of the criminal proceedings. The failure of the Ohio Public Defender to offer such constitutionally-mandated counsel excuses the failure of the petitioner to abide by the timing requirements of applicable procedural rules.

Therefore, upon establishing that he was actually prejudiced by any ineffective representation, the petitioner is entitled to present to a federal court for merit review those claims that should have been brought to the attention of the Ohio state courts throughout the course of the petitioner's legal battles. *See Coleman*, 501 U.S. at 750. Having found no cause for White's default, neither the magistrate judge nor the district judge addressed the prejudice prong. Accordingly, unless there is another basis upon which to excuse the petitioner's procedural default, we must remand to the district court to decide whether the petitioner can establish prejudice.

White claims that there is such an alternative basis to excuse his procedural default, arguing that even if this court finds that he has not shown cause and prejudice, the procedural default should nonetheless be excused because a fundamental miscarriage of justice would result from a failure

afraid of the defendant. Jeff indicated White had filed a complaint against the defendant and sought a protective order and divorce from him. Mabel Jean Edwards, also a nursing home employee, told the jury she discussed White's domestic problems with the defendant. Edwards averred she "often" saw White with black eyes and bruises on her neck. According to Edwards, White told her the defendant once shot at her and a friend.

Euclid police officer Patrick Lynch testified the defendant's auto was found north of Columbus on the northbound side of Interstate I-71 at 2:14 a.m. the day after the shooting. The left rear tire on the vehicle was flat. Lynch told the jury that highway patrol reports from the previous day did not refer to the auto. In February 1989, police arrested the defendant in California and brought him back to Cleveland for trial.

The defendant denied killing his former wife and told the jury he was in Columbus at the time of the shooting. He claimed he spent the late afternoon of November 4, 1988 with his current wife, Kimberly Fox White, until she went to work that night. According to the defendant, he left for Cleveland at 7:00 p.m. to visit relatives after learning about the death of an uncle. The defendant stated his auto had a flat tire on Interstate 71 just outside Columbus and he walked to a nearby convenience store to phone for assistance. Unable to secure towing services, the defendant went to a laundromat/restaurant named "Dirty Dungarees" where he met a woman, Rhonda Simon. The defendant introduced himself to her as "Tony Love", a name he used as a radio disc jockey. The woman later drove him to his apartment where she left her telephone number on a magazine. The magazine was introduced into evidence. The defendant gave Simon a record album for bringing him home. The defendant testified that, after Brown left, a neighbor, Andrea Bell, visited him. The defendant asked her to order a pizza for him from her apartment since his telephone was not working.

According to the defendant, he and his wife later tried to retrieve his auto but the battery was dead. They spent the rest of the evening watching videotaped movies. The defendant told the jury he awoke the morning of the slaying at 8:15 and went on errands with his wife. He claimed that, as he left  the apartment complex on errands, he spoke with Bell about the pizza not arriving the previous night. Later that day the defendant learned his former wife had been killed. He acknowledged he left for California after police visited his mother in Cleveland. The defendant stated the police told his mother they would shoot him.

Rhonda Simon corroborated the defendant's testimony as to meeting "Tony Love" at 8:00 p.m. on November 4, 1988 at "Dirty Dungarees." She verified that he told her of his flat tire and that she drove him to his apartment where she left her phone number on a magazine. Simon averred she arrived at her house at approximately 10:00 p.m. Andrea Bell also agreed she visited the defendant at his apartment "on a Friday evening in early November" and learned of his flat tire. According to Bell, she spoke with the defendant the next morning between 8:30 and 9:00 as he left the apartment complex with his wife in her auto. Kimberly Fox White corroborated the defendant's testimony and claimed he was with her in the early morning hours of November 5, 1988.

Private investigator John Younkin told the jury that the distance from defendant's auto on Interstate 71 to the nursing home where White was shot equaled 139.3 miles. According to Younkin, it requires two hours and nineteen minutes to drive this distance at the posted speed limits.

The defendant offered two character witnesses on his behalf. Glenn Frazier, a pastor at the Gospel Palace Church and manager of a radio station where  defendant hosted an inspirational program, testified to the defendant's honesty.  Bishop F.E. Perry stated the

assistance of appellate counsel in his direct appeal, it is clear from other portions of his brief, the affidavit from his counsel at the Ohio Public Defender's Office, his arguments before the state courts, and simple logic that the reason the application for reopening was filed three years late was the failure of his attorney to file that pleading in compliance with the rule. As evidenced in the present case and as noted in *Paris v. Turner*, No. 97-4129, 1999 WL 357815 (6th Cir. (Ohio) May 26, 1999), the public defender's office has repeatedly failed to preserve the right of criminal defendants to challenge the constitutionality of their convictions due to its disregard, whether intentional or because of inadequate funding and staffing, of filing deadlines and procedural barriers.

Without question, an attorney's failure or refusal to abide by established time deadlines in handling a client's appeal is conduct falling below the minimal standards of competency that federal case law has imposed upon counsel to satisfy constitutional safeguards. *See Strickland v. Washington*, 466 U.S. 668, 698 (1984) (a finding of ineffective assistance of counsel requires first that an attorney's representation fall below an objective standard of reasonableness). *See also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (failure to perfect a direct appeal in derogation of a request to do so is a *per se* violation of the Sixth Amendment, regardless of whether the appeal would have been successful). In fact, such deficiencies have been held to constitute ineffective assistance of counsel per se. *See Rodriguez v. United States*, 395 U.S. 327, 330 (1969) ("Those whose right to appeal has been frustrated should be treated exactly like any other appellant; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage of the proceedings.").

The State of Ohio argues, nevertheless, that a petitioner such as White has no constitutional right to counsel at any stage of criminal proceedings beyond a direct appeal as of right. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Without a right to counsel, the petitioner also has no

cause to excuse filing of an application for reopening over one year after journalization of appellate judgment); *State v. Klein*, No. 49260 (Ohio App. 8 Dist., March 15, 1994) (holding *pro se* status and ignorance of law did not constitute "good cause" to excuse filing of application for reopening five months after journalization and two months after effective date of new Rule 26(B)); *State v. Wright*, No. 93 CA 2110, 1994 WL 398805 (Ohio App. 4 Dist., July 29, 1994) (holding state's failure to respond to an application for reopening constitutes "good cause"); *State v. Fields*, No. 95 CA-08-048 (Ohio App. 5 Dist., April 21, 1994) (same); *State v. Wright*, No. 93 CA 2110, 1994 WL 398805 (Ohio App. 4 Dist., July 29, 1994) (same). Nonetheless, we recognize that the rule is relatively new and acknowledge that it may take some time for the Ohio courts to achieve consensus.

In any event, we need not focus on whether the good cause exception to Rule 26(B) constitutes an independent and adequate state ground, because we conclude, upon consideration of the fourth *Maupin* factor, that the petitioner has established cause for his failure to follow the state procedural rule. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.") The district court, through the adoption of the magistrate judge's report and recommendation, held that ineffective assistance of appellate counsel did not serve as cause because"[c]ounsel's failure to file a timely application for reopening because he had a heavy case load does not constitute an objective factor external to the defense." We disagree. The external cause for the petitioner's non-compliance with Rule 26(B) is provided by the continued deficiencies in the office of the Ohio Public Defender. Although the petitioner states in his appellate brief that the cause for his procedural default was ineffective

defendant had been a minister at their church and was a "family" man. Perry described the defendant as truthful.

In rebuttal, the state called Deborah Brown who swore she spoke with the defendant in Cleveland on the afternoon before the shooting between 3:40 p.m. and 3:55 p.m. The defendant allegedly asked Brown whether she had seen White. Patricia Laster also averred she saw the defendant in his auto between 3:00 p.m. and 4:00 p.m. on November 4, 1988. Both women testified they had observed defendant strike White on previous occasions.

*State v. White*, No. 1991 WL 8581 at *1-*3 (Ohio Ct. App., Jan. 31, 1991), *aff'd*, 647 N.E.2d 787 (Ohio 1995).

On May 12, 1989, a jury found White guilty of one count of aggravated murder with a firearm specification and two counts of felonious assault with firearm specifications. On May 15, 1989, the trial court sentenced him to 20 years to life for aggravated murder, three years for the firearms specification, and 8-to-15 years on each count of felonious assault, all to be served consecutively. On January 31, 1991, the Ohio Court of Appeals overruled the petitioner's assignments of error, but *sua sponte* ordered the trial court to vacate one of his convictions for felonious assault under the allied offenses doctrine. The court of appeals's decision was journalized on February 11, 1991.

Although the petitioner obtained representation from the Office of the Ohio Public Defender in 1991, the attorney assigned to White's case did not file an application for reopening alleging that his appellate counsel had rendered ineffective assistance in failing to raise four assignments of error until three years later, on February 16, 1994. The court of appeals denied White's application for reopening, finding it to be untimely based on Ohio App. R. 26(B), which provides:

A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and

sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the application shows good cause for filing at a later time.

The petitioner attached to his application for reopening an affidavit from his attorney stating that he had been assigned White's case in 1991 but had been unable to review the merits of the case until late 1993, as a result of his office's "overwhelming caseload" and his own "personal heavy caseload." White's counsel argued that his heavy caseload served as "good cause," as that phrase is used in Rule 26(B), to excuse his tardiness. The Ohio Court of Appeals rejected that argument, stating that "an applicant's ignorance of App. R. 26(B) or its procedural requirements will not establish good cause for the untimely filing of an application for reopening," and that "an 'office's overwhelming caseload and my personal heavy caseload' does not establish good cause for the untimely filing of an application for reopening as brought pursuant to App. R. 26(B)." The Ohio Supreme Court affirmed that decision, *see State v. White*, 647 N.E.2d 787 (Ohio 1995), and the United States Supreme Court denied certiorari. *See White v. Ohio*, 516 U.S. 892 (1995).

White then filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Ohio, raising the following claims:

(1) violation of petitioner's rights to due process and a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution on the grounds of prosecutorial misconduct; (2) petitioner's Fifth and Fourteenth Amendment rights against self-incrimination, to due process and a fair trial were denied when the trial court repeatedly allowed introduction of other acts evidence and extrinsic evidence of petitioner's character to be presented to the jury; (3) petitioner's Sixth and Fourteenth Amendment rights to confrontation

*cert. denied*, 120 S.Ct. 110 (1999), "[t]he alternative holding thus does not require us to disregard the state court's finding of procedural bar."

We turn next to the third *Maupin* factor, which requires us to consider whether the state procedural rule is an adequate and independent state ground to foreclose federal relief. Such a rule is adequate if it is regularly or consistently applied by the state court, *see Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling." *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985); *see also Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir. 1999), *petition for cert. filed*, 68 USLW 3116 (July 29, 1999) No. 99-203) ("[T]he fact that a petitioner has not complied with a state procedural rule cannot bar federal review of constitutional claims if the state rule is not 'firmly established and regularly followed.'") (internal quotation marks and citation omitted)).

White argues that the "good cause" requirement of Ohio's App. R. 26(B) does not constitute an adequate and independent state ground because it is neither firmly established nor uniformly applied by the Ohio courts. In support of his argument, White cites to instances in which courts have allowed delays well after the 90-day deadline and also argues that Rule 26(B) does not provide any clear guidelines for determining when a petitioner can file his petition beyond the 90-day filing period.

A review of the Ohio court of appeals cases attached to Petitioner's brief reveals that the state courts have not achieved consensus on what constitutes "good cause" to excuse non-compliance with Rule 26(B). *See, e.g.*, *State v. McCarter*, No. 62346 (Ohio App. 8 Dist., Aug. 12, 1994) (holding pro se status and ignorance of the law did not constitute "good cause" to excuse filing of application for reopening almost three years after journalization and seven months after effective date of new Rule 26(B)); *State v. Nitenson*, No. 91 CA 796, 1994 WL 69894 (Ohio App. 4 Dist., Feb. 24, 1994) (holding *pro se* status constitutes good

acts testimony, hearsay evidence, and extrinsic evidence to impeach defendant's character.  In addition, this court addressed the issue of prosecutorial misconduct in light of the harmless error rule (Crim. R. 52(A)) and held that: "Although the prosecutor repeatedly violated the rules of evidence in this case, we are compelled to find these errors harmless in light of the overwhelming evidence of the defendant's guilt.  *State v. Abrams* (1974), 39 Ohio St.2d 53; *Chapman v. California* (1967), 386 U.S. 18. . . ."

*Id*. at 4-5.

White argues that the appeals court's alternative holding – that his claims would be barred by *res judicata* even if they were not procedurally barred -- constitutes a decision on the merits and that his claims, therefore, are not procedurally barred.[1]   We cannot agree.  As the Supreme Court has explained, "a state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (emphasis in original); *accord Sochor v. Florida*, 504 U.S. 527, 533 (1992).  As we concluded in *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998),

---

[1]He argues further that his application for reopening was a nullity because the court held that it had already decided his claims on direct appeal.  A review of petitioner's direct appeal brief and the appeals court's resolution reveals that the court had indeed decided the merits of petitioner's claims regarding the admission of other acts testimony, hearsay evidence, and extensive evidence to impeach his credibility, but those claims had only been framed and ruled upon as violations of state law.  The import of the claim raised in the application for reopening was that White's appellate counsel rendered ineffective assistance in failing to raise those claims as violations of federal law.  Indeed, the petitioner does not contend that he raised those claims as violations of federal law in his direct appeal, but instead that this court should deem it so based on the court of appeals's language in denying the application for reopening.

and cross-examination were denied when the prosecution was permitted to introduce hearsay evidence in the form of prior statements made by the decedent; and (4) petitioner's Sixth and Fourteenth amendment rights to effective assistance of appellate counsel were denied when:  [a] appellate counsel failed to raise an issue on appeal that but for counsel's failure there is a reasonable probability that the result of the appeal would have been different and,  [b] Ohio provides no remedy for vindication of a denial of the defendant's right to the effective assistance of counsel.

The case was referred to a magistrate judge, who issued a report and recommended that the petition be dismissed because the claims were procedurally defaulted under Ohio App. Rule 26(B) and because the petitioner was unable to show cause and prejudice for the default. Over the petitioner's objections, the district court adopted the magistrate judge's report and recommendation and dismissed the petition based on procedural default. This appeal followed.

### *ANALYSIS*

White appeals the district court's dismissal of his habeas corpus petition on the basis of procedural default.  In considering a district court's disposition of a habeas petition, we review the district court's legal conclusion *de novo*, and its factual findings for clear error.  *See Carpenter v. Mohr*, 163 F.3d 938, 942-43 (6th Cir. 1998), *cert. granted*, 120 S.Ct. 444 (1999).

Under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986), this circuit utilizes the following four-part analysis when the state argues that a federal habeas claim has been procedurally defaulted in state court:  (1) whether there is a procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to follow this rule; (2) whether the state courts actually enforced the state procedural rule; (3) whether the state procedural rule is an adequate and independent state ground to foreclose federal relief; and if so (4) whether the

petitioner has established cause for his failure to follow the rule and prejudice by the alleged constitutional error.

The petitioner contends that none of the first three factors of the *Maupin* test have been met.  He also argues, in the alternative, that even if those three factors have been satisfied, he is able to show cause and prejudice for his default under the fourth factor, thereby entitling him to federal court review of the merits of his habeas corpus claims. He also argues that the court may excuse his procedural default because failure to address the merits of his constitutional claims will result in a fundamental miscarriage of justice.  We consider each of the four *Maupin* factors in turn, addressing petitioner's arguments in the process.

The first *Maupin* factor requires us to consider whether there is a procedural rule that is applicable to the petitioner's claim and whether he failed to follow that rule.  The petitioner argues that there was no procedural rule applicable to his claim because Ohio's App. R. 26(B) was not in effect at the time his direct appeal was decided on January 31, 1991, and he filed an application to reopen his appeal as soon as the claim of appellate ineffectiveness was discovered.  We find this argument unmeritorious.  Although White is correct that prior to July 1, 1993, Rule 26 did not contain a distinct provision for ineffective assistance of counsel claims, it did set forth a ten-day time limit for the "application for reconsideration of any cause or motion submitted on appeal." Following the Ohio Supreme Court's recommendation that the legislature adopt an amendment to better serve defendants who allege ineffective assistance of appellate counsel, *see State v. Murnahan*, 584 N.E.2d 1204 (Ohio 1992), Rule 26(B) was enacted to provide a 90-day limit for ineffective assistance of appellate counsel claims.

Rule 26(B) is clearly applicable to the petitioner's claim and would have required White to file his motion to reopen within 90 days of its effective date, July 1, 1993.  However, as the Ohio Court of Appeals noted in denying White's motion to reopen, "[t]he application for reopening ... was not filed ...

until February 16, 1994, more than three years after journalization of the appellate judgment, one year and eleven months after the announcement of *State v. Murnahan* (1992), 63 Ohio St. 3d 60, and more than seven months after the effective date of App. R. 26(B).  On its face, the application for reopening is untimely." *State of Ohio v. Frederick White*, No. 57944 slip op. at 1-2 (Ohio Ct. App., Oct. 19, 1994). We thus conclude that there was an applicable rule in place and that White failed to follow it.

Turning to the second *Maupin* factor, we must consider whether the state courts actually enforced the state procedural rule.  The Ohio Court of Appeals held that it was compelled to deny the petitioner's application for reopening because it was untimely under Rule 26(B) and no good cause existed to excuse that untimeliness.  The court also said:

Notwithstanding the fact that the application for reopening is untimely, a substantive review of the applicant's supporting memorandum clearly demonstrates that *res judicata* prevents the reopening of the appellate judgment that was rendered in *State v. White* (Jan. 31, 1991), Cuyahoga App. No. 57944, unreported.  The doctrine of *res judicata* prohibits a defendant from relitigating any defense or claim of error that has been previously raised on direct appeal. *State v. Perry*, 10 Ohio St. 2d 175 (Ohio 1967). . . .  In an attempt to reopen the appellate judgment that was rendered by this Court, the applicant raises four proposed assignments of error which appellate counsel allegedly failed to argue upon appeal.  These four proposed assignments of error address the following issues:  (1) other acts testimony (Evid. R. 404); (2) hearsay evidence (Evid. R. 801); (3) extensive evidence to impeach defendant's character (Evid. R. 608); and (4) prosecutorial misconduct.  This court, however, has previously examined upon direct appeal each of the applicant's four proposed assignments of error. Through the fourth, fifth, and sixth assignments of error as raised on direct appeal, this Court reviewed the issues of other