JOURNAL ENTRY AND OPINION
In State v. Creasey, Cuyahoga County Court of Common Pleas Case No. CR-291363 and 278010, applicant was convicted of involuntary manslaughter and found to be a probation violator, respectively. This court affirmed that judgment in State v. Creasey (Nov. 23, 1994), Cuyahoga App. Nos. 65717 and 65718. unreported. The Supreme Court of Ohio dismissed applicant's appeal to that court for the reason that no substantial constitutional question existed and overruled applicant's motion for leave to appeal. State v. Creasey (1995), [Supreme Court of Ohio Case No. 95-104].
Applicant has filed with the clerk of this court an application for reopening. Applicant asserts that he was denied the effective assistance of appellate counsel. We deny the application for reopening. As required by App.R. 26(B)(6), the reasons for our denial follow.
Initially, we note that App.R. 26(B)(1) provides, in part: "An application for reopening shall be filed * * * within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." App.R. 26(B)(2)(b) requires that an application for reopening include "a showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment."
This court's decision affirming applicant's conviction was journalized on December 5, 1994. The application was filed originally on January 26, 2001, clearly in excess of the ninety-day limit.
Applicant argues that this court should have appointed additional counsel after the public defender represented applicant before this court and the Supreme Court of Ohio. Applicant also complains that his counsel did not inform him of the reopening procedure. It is well-established that lack of counsel and ignorance of the law is not an excuse for the untimely filing of an application for reopening — especially more than six years after the journalization of the decision affirming the conviction. See, e.g., State v. Fortson (Dec. 17, 1998), Cuyahoga App. No. 72229, unreported, reopening disallowed (Jan. 23, 2001), Motion No. 18195, at 2-4.
Likewise, applicant contends that the Sixth Circuit's discussion of the right to counsel upon the filing of an application in White v. Schotten
(C.A. 6 2000), 201 F.3d 743, certiorari denied Bagley v. White (2000),531 U.S. 940, 121 S.Ct. 332, 148 L.Ed.2d 267, establishes good cause for the untimely filing of the application. Yet, this court has held that there is no right to counsel in filing an application and the absence or denial of counsel does not show good cause for untimely filing. State v.Walker (May 31, 1984), Cuyahoga App. No. 47616, unreported, reopening disallowed (Aug. 3, 2001), Motion No. 27447. Applicant's failure to demonstrate good cause is a sufficient basis for denying the application for reopening. As a consequence, applicant has not met the standard for reopening.
We also deny the application on the merits. Having reviewed the arguments set forth in the application for reopening in light of the record, we hold that applicant has failed to meet his burden to demonstrate that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). In State v. Spivey (1998), 84 Ohio St.3d 24, 701 N.E.2d 696, the Supreme Court specified the proof required of an applicant:
 In State v. Reed (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 458, we held that the two prong analysis found in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). [Applicant] must prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a "reasonable probability" that he would have been successful. Thus [applicant] bears the burden of establishing that there was a "genuine issue" as to whether he has a "colorable claim" of ineffective assistance of counsel on appeal.
Id. at 25. Applicant cannot satisfy either prong of the Strickland
test. We must, therefore, deny the application on the merits.
After this court ordered applicant's original application stricken from the record for failure to comply with the requirements of App.R. 26(B), applicant filed an application on March 9, 2001 which we treat as the "application" for purposes of the following review. Applicant nominally assigns twenty-two errors. Among these, he has merely recited a claimed error without substantive argument or authority with respect to several assignments of error (1: speedy trial; 3: no transcript printed for a pretrial conference and voir dire; 5: the trial judge was biased and partial; 18: counsel failed to have side bar conference transcribed; 20 and 21, respectively: counsel should have argued that applicant's pro se
motion for continuance was not a sham and that the prosecutor's summation regarding the grand jury process was misleading).
 Although the application characterizes applicant's assertions as assignments of error, applicant's filings "do not sufficiently identify the error made in the trial court so as to allow review." [State v. Cripple, (May 20. 1993), Cuyahoga App. No. 61773, unreported, reopening disallowed (Nov. 13, 1998), Motion No. 97933, at 9]. Merely asserting error is not sufficient for applicant to demonstrate that both counsel's performance was deficient and that the deficient performance prejudiced him.
State v. Kelly (Nov. 18, 1999), Cuyahoga App. No. 74912, unreported, reopening disallowed (June 21, 2000), Motion No. 12367, at 9. As a consequence, applicant's assignments of error 1, 3, 5, 18, 20 and 21 are not well-taken.
In assignments of error 2, 8, 9 and 17, applicant's essential complaint is that the indictment in Case No. CR-291363 charging him with murder was not signed by the grand jury foreperson. Applicant contends that the presence of the handwritten initials "MS" for the foreperson of the grand jury invalidate the indictment. In support of his position, applicant cites Kennedy v. Alvis (1957), 76 Ohio Law Abs. 132, 145 N.E.2d 361, in which the Court of Common Pleas for Franklin County granted relief in habeas corpus because there was no signature of the foreperson on indictment. It is well-established, however, that "habeas corpus is not available to test the validity or sufficiency of an indictment or an amended indictment." State ex rel. Bragg v. Seidner (2001),92 Ohio St.3d 87, 88, 748 N.E.2d 532, 533.
Yet, even if one ignores that the holding of Kennedy has been superseded, applicant has not identified facts in the record establishing that "MS" was not the signature of the foreperson. See, e.g., Dun v.State (1922), 17 Ohio App. 10 (the indictment was sufficient where the foreman subscribed his name using the initials "C. A. Rannels * * * and, if anything, is a mere defect in the form," Id. at 11). Furthermore, applicant has not identified any challenge to the indictment before the trial court and has not provided this court with any controlling authority requiring reversal of applicant's conviction. We cannot, therefore, conclude that appellate counsel was deficient or that applicant was prejudiced by the absence of the matters presented through applicant's assignments of error 2, 8, 9 and 17.
In his sketchy, fourth assignment of error, applicant complains that his appellate counsel was ineffective for failing to argue that this court did not comply with Penson v. Ohio (1988), 488 U.S. 75,109 S.Ct. 346, 102 L.Ed.2d 300, in which the court of appeals permitted the withdrawal of appellate counsel. In applicant's direct appeal, however, this court — unlike the court in Penson — assigned the public defender to represent applicant on appeal after permitting assigned counsel to withdraw. Applicant has not demonstrated that appellate counsel was deficient or that he was prejudiced by the absence of this assignment of error on direct appeal.
In his sixth and ninth assignments of error, applicant contends that the grand jury was not lawfully constituted. Nevertheless, applicant does not refer this court to any portion of the record providing the factual basis for this claim. Assignments of error 6 and 9 are not, therefore, well-taken.
Applicant's prosecution arose from the death of Daisy Wiggins, a distant cousin of applicant. Wiggins permitted applicant to stay with her and to store his belongings in her apartment. Wiggins died on November 2, 1992 as a result of injuries which occurred on October 22, 1992 and after she entered the hospital on October 24, 1992.
In assignments of error 7 and 10, applicant complains that the prosecution misrepresented the facts during the state's opening statement by indicating that: Wiggins had a blow to her head and cut lip; applicant was arrested on December 13, 1992; Wiggins never had a gun in her home; and applicant struck Wiggins with his fist. Applicant contends that counsel had a duty to argue "that these statements were never proven beyond a reasonable doubt on direct appeal." Application at V.
On direct appeal, this court summarized some of the testimony at trial as follows:
 Mrs. Wiggins also spoke with her sister, Margaret Zimorman, about the incident before she died. Mrs. Zimorman testified that she asked her sister what happened and she responded, "Leroy hit me." Defense counsel asked Mrs. Zimorman if that was all Mrs. Wiggins said and Mrs. Zimorman replied, "She put her hands up to her eye." (TR. 79-80).
 Dr. Seligman testified as the coroner who performed the autopsy on Mrs. Wiggins. He ruled the death a homicide, citing a heart attack and pulmonary embolism as the direct cause of death. The autopsy also noted a "healing contusion around her left eye; she had some healing abrasions of her left forehead; she had lacerations of her lower lip; and a bruise on the right side of her scalp." (TR. 129) Dr. Seligman's internal examination found a subdural hematoma on Mrs. Wiggins's brain. He testified that the symptoms of this condition could include drowsiness, loss of consciousness, headache, weakness and slurred speech. Dr. Seligman stated that some people will develop these symptoms immediately while the symptoms in others may not manifest themselves until hours or days after the injury. Dr. Seligman stated that the injuries sustained by Mrs. Wiggins were consistent with being struck with a fist. He also admitted that the injuries could have been sustained by a fall or by running into a door, when questioned by the defense.
State v. Creasey (Nov. 23, 1994), Cuyahoga App. Nos. 65717 and 65718, unreported, at 3-4. Similarly, the arresting officer testified that applicant was arrested on December 13, 1992. TR. 207-209. Zimorman also testified that, to her knowledge, Wiggins never kept a gun. TR. 65.
Having failed to demonstrate that the prosecutor misrepresented the facts, applicant cannot demonstrate either that appellate counsel was deficient or that he was prejudiced by the absence of argument on direct appeal regarding these remarks by the prosecutor. Assignments of error 7 and 10 are not, therefore, well-taken.
In his eleventh assignment of error, applicant asserts that his appellate counsel should have argued that Wiggins was not bruised. Although applicant states that the hospital and emergency medical service records do not support the claim that Wiggins was bruised, those records do — in fact — indicate the injured areas. State's Exh. 16. Similarly, in his fourteenth assignment of error, applicant states that his appellate counsel should have argued that, based on Dr. Seligman's testimony, the hospital did not provide treatment for the victim for ten hours. Yet, this court on direct appeal extensively reviewed the evidence and found it sufficient to overcome the assertion that applicant was entitled to acquittal under Crim.R. 29 and that the verdict was not against the manifest weight of the evidence. State v. Creasey (Nov. 23, 1994), Cuyahoga App. Nos. 65717 and 65718, unreported, at 12 and 19. Assignments of error 11 and 14 are not, therefore, well-taken.
In his twelfth assignment of error, applicant contends that the following question asked by the prosecutor constituted vouching for the witness: "I believe you were there and saw what Daisy was wearing at the funeral home; is that correct?" In State v. Rogers (July 20, 2000), Cuyahoga App. No. 76355, unreported, the appellant contended that the prosecutor had improperly vouched for the veracity of a witness
 Generally, the conduct of a prosecuting attorney during a trial cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Papp (1978), 64 Ohio App.2d 203, 412 N.E.2d 401, cited with approval, State v. Maurer
(1984). 15 Ohio St.3d 239, 473 N.E.2d 768.
Id. at 6. Even if we ignore the absurdity of applicant's contention that the use of the phrase "I believe" in this context constitutes vouching for a witness, applicant has not — in any event — demonstrated that the question rendered the trial fundamentally unfair (particularly in light of this court's analysis on direct appeal regarding the sufficiency and weight of the evidence). Applicant has not demonstrated that appellate counsel was deficient or that he was prejudiced by the absence of this assignment of error on direct appeal.
In his thirteenth assignment of error applicant complains that the assistant coroner, Dr. Seligman, who testified at trial was not a "licensed doctor as required by R.C. § 313.02." Application, at VI. R.C. 313.02 pertains to the person elected to the office of coroner, however. Applicant also contends that "the autopsy report signed-off by elected coroner Dr. Elizabeth K. Balraj was a falsified autopsy report since there was not a medical record of facial bruises" in the hospital and EMS records. Application, at VI. As discussed above regarding the eleventh assignment of error, however, those records do indeed reflect facial bruises. Assignment of error 13 is not, therefore, well-taken.
Dr. Seligman testified that a person who identified himself as Leroy Creasey met with him twice in the coroner's office and asked him why the death was being ruled a homicide. TR. 137, et seq. Dr. Seligman testified that he was not sure that the person who met with him was present in the courtroom. The trial court determined that the evidence "may be inadmissible under the hearsay rule, but admissible for other reasons * * *." Applicant argues in his fifteenth assignment of error that appellate counsel should have argued that the rule against hearsay barred admission of this testimony. Yet, with the exception of a cursory reference to Evid.R. 404(B) — other crimes, wrongs or acts — applicant cites no authority for his position. As noted with respect to assignments 1, 3, 5, 18, 20 and 21 above, merely asserting error is not sufficient. Assignment of error 15 is not, therefore, well-taken.
In his sixteenth assignment of error, applicant claims that a police officer committed perjury during trial when he testified that the victim made a statement which was inconsistent with the report submitted by the officer. The transcript indicates that Detective Darin Robinson testified that the victim "stated, that the suspect knocked, opened the door, came in and argued some more." TR. 191-192. Applicant contends that this testimony was inconsistent with the following portion of the officer's report: "[N]amed suspect knocked open her door and continued to argue." Although applicant argues that the report used the phrase "kicked open," Application at VII, the report clearly states "knocked open."
Applicant indulges in an additional, strained reading of the transcript with respect to the testimony of Detective Edward Gray, who testified:
Q. How were you aware there was an autopsy?
 A. In a conversation with Dr. Seligman, I changed the title to homicide on November —
Although applicant leaps to the conclusion that the officer — acting without authority — changed the indictment, we note that the indictment was not filed until December 21, 1992. Certainly, these circumstances do not provide a basis for concluding that appellate counsel was deficient or that applicant was prejudiced by the absence of this assignment of error on direct appeal.
After applicant's trial counsel was prepared to rest, applicant personally requested a continuance, inter alia, to subpoena a doctor. Applicant's trial counsel informed the trial court that the testimony of the doctor would be damaging to applicant's case. Although applicant wants this court to subpoena trial counsel because "this cannot be verified," Application at X, his observation proves why this request must fail. "To the extent that this argument is dependent on evidence outside the record, appellate counsel was not deficient in not arguing the issue, because appellate counsel is bound by the record." State v.Sherrills (Dec. 11, 2000), Cuyahoga App. No. 77178, unreported, reopening disallowed (Aug. 13, 2001), Motion No. 24332, at 4. Assignment of error 19 is not, therefore, well-taken.
In his twenty-second assignment of error, applicant asserts that his appellate counsel should have argued that the trial court's jury instruction on accident was incorrect. Applicant cites State v. Poole
(1973), 33 Ohio St.2d 18, 294 N.E.2d 888, in support of his position. InPoole, however, the challenged instruction placed the burden of proving accident on the defendant. The instruction in this case did not place the burden of proving accident on applicant. Applicant has not demonstrated that appellate counsel was deficient or that he was prejudiced by the absence of this assignment of error on direct appeal.
Accordingly, the application for reopening is denied.
JAMES D. SWEENEY, P.J., and MICHAEL J. CORRIGAN, J., CONCUR.