**Daniel T. EADS, Petitioner,**

v.

**John MORGAN, Respondent.**

**No. 1:99 CV 528.**

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 31, 2003.

61. ECF # 47.

62. ECF # 46.

J. Dean Carro, Akron, OH, for Petitioner.

Mark J. Zemba, Office of the Attorney General, Cleveland, OH, for Respondent.

### CORRECTED MEMORANDUM OPINION AND ORDER

BAUGHMAN, United States Magistrate Judge.

#### I. Introduction

This case involves the petition for writ of habeas corpus brought by Daniel T. Eads under 28 U.S.C. § 2254. The State of Ohio has custody of Eads at the North Central Correctional Institution in Marion, Ohio, where respondent John Morgan serves as warden. The parties have consented to the jurisdiction of the Magistrate

Judge.[1]

Eads's amended petition asserts eight grounds for relief.[2] This corrected memorandum opinion and order addresses only grounds two and three. The Court will address the remaining six grounds in a separate memorandum opinion and order.

Grounds for relief two and three claim ineffective assistance of appellate counsel. Morgan argues that Eads has procedurally defaulted on these grounds, and, therefore, this Court cannot rule on the merits.

The Court concludes that the ruling on Morgan's procedural default defense as to grounds for relief two and three turns on the answers to two unsettled questions of Ohio law that have federal constitutional implications.

(1) Is an application to reopen an appeal under Ohio Rule of Appellate Procedure 26(B) part of the direct appeal from a judgment of conviction?

(2) If so, does the application become part of the direct appeal at the time of its filing or only upon the granting of the application?

The answers to these questions have federal constitutional significance because a defendant in a direct appeal from a criminal conviction has a right to counsel.[3] Because the Supreme Court of Ohio has issued no controlling precedent on these questions, and the precedents of the Sixth Circuit have confessed uncertainty as to these answers, the Court will certify these questions to the Supreme Court of Ohio under Supreme Court Rule of Practice XVIII.

## II. Procedural History

Eads filed a pro se petition for federal writ of habeas corpus in this Court raising twenty grounds for relief.[4] The Court thereafter appointed counsel for Eads.[5] Appointed counsel, with leave of court, filed an amended petition that reduced the grounds for relief from twenty to eight.[6] Among those grounds for relief are the two that the Court will address in this memorandum opinion and order:

Ground for Relief Two: Petitioner Eads was denied the effective assistance of appellate counsel when appellate counsel failed to raise on direct appeal issues regarding prosecutorial misconduct in violation of Petitioner Eads Sixth and Fourteenth Amendment rights under the United States Constitution.

Ground for Relief Three: Petitioner Eads was denied the effective assistance of appellate counsel in violation of the Fourteenth Amendment to the United States Constitution when appellate counsel failed to raise significant errors on direct appeal.

The following procedural history relates to those grounds for relief. The Cuyahoga County Grand Jury indicted Eads on one count of murder.[7] A jury found Eads guilty.[8] The trial court sentenced Eads to 15 years to life.[9]

Eads appealed his conviction to the Eighth District Court of Appeals.[10] That

---

1. ECF # 30.

2. ECF # 31.

3. *Evitts v. Lucey*, 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

4. ECF # 1.

5. ECF # 25.

6. ECF # 31.

7. ECF # 11, Ex. A.

8. ECF # 11, Ex. B.

9. ECF # 11, Ex. C.

10. ECF # 11, Ex. L.

court affirmed Eads's conviction.[11]

Eads then appealed to the Supreme Court of Ohio.[12] That Court dismissed Eads's appeal for failure to raise a substantial constitutional question.[13]

Eads filed a pro se application to reopen his appeal under Ohio Rule of Appellate Procedure 26(B).[14] In that application, Eads asserted, among others, the claims now incorporated into grounds for relief two and three of the amended federal habeas corpus petition. The court of appeals denied Eads's Rule 26(B) application on both procedural and merits grounds. First, it ruled the application untimely.[15] Second, it made an alternative ruling that certain claims were barred by *res judicata* and that the remaining claims failed to state a claim of ineffective assistance of appellate counsel.[16]

Eads appealed the denial of his application to reopen to the Supreme Court of Ohio.[17] The Supreme Court affirmed the decision of the court of appeals to deny the application.[18]

### III. Analysis

#### A. Procedural default and its application to this case

■ Morgan has asserted procedural default as a defense to Eads's second and third grounds for relief. He argues that procedural default bars this Court's consideration of the merits of those grounds because the court of appeals denied the application to reopen the direct appeal on the basis of untimeliness, and the Supreme Court affirmed that denial. In *Maupin v. Smith,* the Sixth Circuit implemented a four-part test to determine whether a habeas corpus petitioner has procedurally defaulted his federal claims in state court:

- Is there a procedural rule that is applicable to the petitioner's claim, and further, did the petitioner fail to follow that rule?

- Did the state court enforce the procedural rule?

- Is the state procedural rule an adequate and independent state ground to foreclose federal relief?

- Once procedural default has been found, has the petitioner shown cause for his failure to follow the procedural rule and demonstrate how he was prejudiced by the constitutional error?[19]

■ Eads does not dispute that the first three parts of the *Maupin* test are met here. He argues under the fourth part of the test, however, that cause and prejudice exist to excuse the default. He reasons that Ohio Rule of Appellate Procedure 26(B), under which he made his application to reopen, is part of the direct appeal process under Ohio law. A criminal defendant has a right to counsel and effective assistance of counsel on direct appeal from his conviction.[20] Where assistance of counsel has been denied altogether, prejudice is presumed.[21] Eads filed his applica-

---

11.  ECF # 11, Ex. J.

12.  ECF # 11, Ex. L.

13.  ECF # 11, Ex. N.

14.  ECF # 11, Ex. P.

15.  ECF # 11, Ex. O.

16.  *Id.*

17.  ECF # 11, Ex. T.

18.  ECF # 11, Ex. W, X.

19.  *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986).

20.  *Lucey,* 469 U.S. at 396–97, 105 S.Ct. 830.

21.  *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

tion to reopen without the assistance of counsel.

■ Morgan counters that an Appellate Rule 26(B) application to reopen is a form of post-conviction relief, not a part of the direct appeal. No constitutional right to counsel exists in a post-conviction proceeding.[22]

The outcome of Morgan's procedural default defense, therefore, turns upon whether an Appellate Rule 26(B) application is part of the direct appeal process or a form of post-conviction relief. As discussed below, the answer to this question is anything but clear.

## B. The Ohio Rule of Appellate Procedure 26(B) application to reopen— direct appeal or post-conviction relief?

### 1. The origins of Ohio Rule of Appellate Procedure 26(B)

Ohio Rule of Appellate Procedure 26(B) was promulgated in 1993 to establish a procedure for asserting claims of ineffective assistance of appellate counsel. The Rules Advisory Committee proposed an amendment to Ohio Rule of Appellate Procedure 26 that became section (B) in response to the Supreme Court's recommendation in *State v. Murnahan.*[23]

In *Murnahan* a convicted criminal defendant appealed the denial of his post-conviction relief petition asserting claims of ineffective assistance of appellate counsel.[24] The trial court had denied the petition on the ground that ineffective assistance of appellate counsel claims are not cognizable in a petition for post-conviction relief.[25] The court of appeals reversed, holding that ineffective assistance of appellate counsel claims could be raised in a post-conviction petition.[26] It reinstated *Murnahan's* direct appeal and appointed counsel to represent him.[27]

The Supreme Court reversed the ruling that a post-conviction petition is a proper vehicle for raising ineffective assistance of appellate counsel claims.[28] It identified the motion for reconsideration under Ohio Rule of Appellate Procedure 26 as the proper procedure for asserting such claims.[29]

Because Appellate Rule 26 at the time allowed only ten days after the announcement of the court's decision or journalization thereof, whichever was later, for filing of the motion for reconsideration, the Court set out procedures for "delayed consideration" of such motions asserting ineffective assistance of appellate counsel claims in criminal appeals.

> Since claims of ineffective assistance of appellate counsel may be left undiscovered due to the inadequacy of appellate counsel or the inability of the defendant to identify such errors within the time allotted for reconsideration in the court of appeals or appeal to this court, it may be necessary for defendants to request delayed consideration. Therefore, in an individual case where a defendant has put forth a colorable claim of ineffective assistance of appellate counsel, where the circumstances render the application

---

22. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).

23. *State v. Murnahan*, 63 Ohio St.3d 60, 66 n. 6, 584 N.E.2d 1204, 1209 n. 6 (1992).

24. *Id.* at 61, 584 N.E.2d at 1206.

25. *Id.*

26. *Id.* at 61–62, 584 N.E.2d at 1206.

27. *Id.* at 62, 584 N.E.2d at 1206.

28. *Id.* at 64, 584 N.E.2d at 1208.

29. *Id.* at 64, 584 N.E.2d at 1208–09.

of res judicata unjust, and the time periods for reconsideration in courts of appeals and direct appeal to this court have expired, he or she must: (1) apply for delayed reconsideration in the court of appeals where the alleged error took place pursuant to App. R. 26 and 14(B), and if delayed reconsideration is denied, then (2) file for delayed appeal in this court pursuant to Section 8, Rule II of the Rules of Practice of the Supreme Court.[30]

In a footnote, the Court recommended to the Rules Advisory Committee consideration of an amendment to set out procedures for delayed consideration of motions for reconsideration in criminal cases asserting ineffective assistance of appellate counsel claims.[31]

Although Murnahan had not filed a motion for reconsideration under Appellate Rule 26, the Supreme Court nevertheless treated his case as one handled consistent with the spirit of that rule and affirmed the appellate court's decision to reinstate his direct appeal.[32]

In response to the Supreme Court's recommendation in *Murnahan*, the Rules Advisory Committee proposed an amendment to Appellate Rule 26, which became effective on July 1, 1993, as section (B) of that Rule. That amendment codified the procedures for asserting ineffective assistance of appellate counsel claims in criminal appeals outlined by the Supreme Court in *Murnahan*.

Appellate Rule 26(B) is reproduced in its entirety as Addendum A to this memorandum opinion and order. The salient features of that section, as they relate to the questions at issue in this case, are as follows:

- The procedure is styled as an "application for reopening." [33]

- The application must be filed within 90 days of the journalization of the appellate judgment "unless the applicant shows good cause for filing at a later time." [34]

- If filed beyond the 90–day time limit, the application must contain a showing for good cause for untimely filing.[35]

- The application must contain a sworn statement setting out the grounds for the claims of ineffective assistance of appellate counsel.[36]

- The application must be granted if a genuine issue exists as to ineffective assistance of appellate counsel.[37]

- If the court of appeals grants the application, it must appoint counsel to represent the applicant if indigent and not already represented.[38]

- If the application is granted, the case is to proceed as on an initial appeal.[39]

## 2. Ohio Rule of Appellate Procedure 26(B), procedural default in federal habeas cases, and the Sixth Circuit's decision in White v. Schotten

The Sixth Circuit took up the issue of Ohio Rule of Appellate Procedure 26(B) in

---

30. *Id.* at 65–66, 584 N.E.2d at 1209.

31. *Id.* at 66 n. 6, 584 N.E.2d at 1209 n. 6.

32. *Id.* at 66–67, 584 N.E.2d at 1209–10.

33. Ohio R.App. Proc. 26(B).

34. Ohio R.App. Proc. 26(B)(1).

35. Ohio R.App. Proc. 26(B)(2)(b).

36. Ohio R.App. Proc. 26(B)(2)(d).

37. Ohio R.App. Proc. 26(B)(5).

38. Ohio R.App. Proc. 26(B)(6)(a).

39. Ohio R.App. Proc. 26(B)(7).

the context of procedural default defenses to federal habeas corpus petitions in *White v. Schotten.*[40]

The procedural posture in *White* was substantially similar to that in this case. The trial court convicted White of murder and felonious assault, and the court of appeals affirmed the conviction.[41] Three years after that affirmance, the Ohio Public Defender filed an application to reopen under Appellate Rule 26(B) on White's behalf.[42] As the application was untimely under the rule, counsel stated as good cause that his office had agreed to represent White shortly after the affirmance of his conviction, but an overwhelming case load had prevented an earlier filing.[43]

The court of appeals denied the application as untimely and, alternatively, on the merits.[44] The Supreme Court affirmed that denial.[45]

White brought a federal habeas petition asserting the ineffective assistance of appellate counsel claims raised in his application for reopening.[46] The respondent warden countered with a defense of procedural default, relying upon White's failure to comply with the time requirements set out in Ohio Rule of Appellate Procedure 26(B).[47] The district court dismissed White's petition based on procedural default.[48]

The Sixth Circuit reviewed the dismissal of the petition using the four-part test established in *Maupin v. Smith.*[49] The court resolved the first two parts of the *Maupin* test in favor of the warden.[50] The court expressed some reservation about whether the third *Maupin* factor—that the state procedural rule be an adequate and independent state ground of foreclosed federal relief—was satisfied.[51] The court was concerned that the state courts of appeals had not reached a consensus on what constitutes good cause for an untimely filing of an application.[52] It decided that it did not need to definitively resolve its concerns under the third part of the test because of its analysis under the fourth part.[53] Eads has made no argument under the third *Maupin* factor and, therefore, this Court assumes, without deciding, that Appellate Rule 26(B) does constitute an adequate and independent ground to foreclose federal relief.

As in this case, the *White* court's decision turned on the outcome under the fourth part of the *Maupin* test—cause for the procedural default and prejudice caused thereby.[54] White claimed ineffective assistance of appellate counsel—the three-year delay in the filing of his application—as cause for the procedural default.[55] The warden argued, as Morgan does here, that White had no right to counsel on the

**40.** *White v. Schotten,* 201 F.3d 743 (6th Cir. 2000).

**41.** *Id.* at 748.

**42.** *Id.*

**43.** *Id.*

**44.** *Id.* at 748, 750–51.

**45.** *Id.* at 748.

**46.** *Id.* at 748–49.

**47.** *Id.* at 749.

**48.** *Id.*

**49.** *Id.* at 749, citing *Maupin,* 785 F.2d at 138.

**50.** *Id.* at 749–51.

**51.** *Id.* at 751.

**52.** *Id.*

**53.** *Id.*

**54.** *Id.*

**55.** *Id.* at 752.

application because the procedure amounted to post-conviction relief rather than a continuation of the direct appeal.[56]

Citing *Murnahan*, the court dismissed Schotten's arguments holding that the application to reopen "must be a continuation of activities related to the direct appeal itself." [57] As such, it held that White had the right to counsel and the right to effective assistance of counsel in that proceeding.[58]

It found counsel's failure to timely file the application to reopen "conduct falling below the minimal standards of competency that federal case law has imposed upon counsel to satisfy constitutional safeguards." [59] It remanded the case to the district court for a determination of whether the ineffective assistance of appellate counsel had prejudiced White.[60]

Under *White*, therefore, the Ohio Rule of Appellate Procedure 26(B) process is considered part of the direct appeal for purposes of procedural default analysis.

### 3. The state courts' response to White v. Schotten

The response of the courts of appeals in Ohio to the ruling in *White v. Schotten* has been overwhelmingly unfavorable. In every case in which a convicted defendant has raised the argument that his application to reopen was untimely for want of assistance of counsel as required by *White*, the Ohio appellate courts have rejected the argument.[61] Many of these cases base this rejection upon Supreme Court Rule of Practice II, Section 2(A)(4)(b), which limits the provision for delayed appeals to "appeals on the merits" and excludes from that provision "appeals involving post-conviction relief", including appeals brought under *State v. Murnahan* ... and App. R. 26(B).[62] These cases reason that the Supreme Court, by drawing this distinction, has indicated that appeals under Appellate Rule 26(B) are not "appeals on the merits." [63]

Despite this consensus among the Ohio appellate courts, the Supreme Court has not spoken to the issue. In *State v. Moore*,[64] an appeal from a denial of an application to reopen under Appellate Rule 26(B), the Court affirmed the denial on the ground that the defendant's claim of deficient performance failed to raise a genuine issue of deprivation of appellate counsel.[65] In a concurring opinion, Justice Deborah Cook, now a judge on the Sixth Circuit, chided the Court for bypassing the ruling

---

**56.** *Id.*

**57.** *Id.* at 752.

**58.** *Id.* at 752–53.

**59.** *Id.* at 752.

**60.** *Id.* at 753.

**61.** *Lambert v. Warden*, 81 Fed.Appx. 1, 5 (6th Cir.2003) (unpublished table decision), citing *State v. Creasey*, Nos. 65717 and 65718, 2001 WL 1167121, at *1 (Ohio App. Aug. 29, 2001); *State v. Marcum*, No. CA96–03–049, 2002 WL 42894, at *3 (Ohio App. Jan. 14, 2002); *State v. Darrington*, No. 65588, 2000 WL 1655236, at *2 (Ohio App. Oct. 27, 2000); *State v.*

*Bragg*, No. 58859, 2001 WL 1671424, at *1 (Ohio App. Nov. 26, 2001); *State v. Walker*, No. 47616, 2001 WL 1167158, at *2 (Ohio App. Aug. 3, 2001); *State v. Dozier*, Nos. 56120 and 56121, 2002 WL 42964, at *2 (Ohio App. Jan. 3, 2002); *State v. Collins*, No. 00AP–650, 2002 WL 77117, at *1 (Ohio App. Jan. 22, 2002).

**62.** *E.g.*, *State v. Darrington*, 2000 WL 1655236, at *2.

**63.** *Id.*

**64.** *State v. Moore*, 93 Ohio St.3d 649, 758 N.E.2d 1130 (2001).

**65.** *Id.* at 651, 758 N.E.2d at 1133.

in *White v. Schotten.*[66] She noted that the court of appeals had addressed the *White* court's characterization of Appellate Rule 26(B) procedure as part of the direct appeal process, and Moore had made that argument on appeal to the Supreme Court.[67] She concluded that "the majority should have taken advantage of this opportunity to clarify our understanding of the premises set forth in *White.*" [68]

The Supreme Court has not since returned to the question, and it remains unsettled.

### 4. Continuing uncertainty in the Sixth Circuit over White v. Schotten

Although the holding in *White v. Schotten* remains the law of the Circuit as to whether an Appellate Rule 26(B) application is part of the direct appeal process for purposes of federal procedural default analysis, uncertainty remains as to whether the court should continue to adhere to that rule in the absence of a definite pronouncement from the Supreme Court of Ohio.

■ This uncertainty is underscored by the court's recent decision in *Lambert v. Warden.*[69] The *Lambert* court addressed the characterization of the application to reopen as part of the direct appeal in the context of the statute of limitations set out in the Antiterrorism and Effective Death Penalty Act ("AEDPA").[70] Under that statute of limitations, direct review delays

the start of the statute of limitations, whereas collateral review of a conviction merely tolls its running.[71]

The majority opinion acknowledged that *White* is the law of the Circuit and held that Appellate Rule 26(B) applications are part of the direct review process.[72] The majority, nevertheless, conducted an independent analysis of the question, taking into consideration state court decisions responding to *White,* and concluded that the better view is that the application to reopen should be considered part of the collateral review process.[73] The opinion contains a detailed analysis demonstrating that the Sixth Circuit has decided several cases "in direct contradiction to *White,* while verbally paying fealty to its holding." [74]

Nevertheless, constrained by the rule that one panel of the court cannot overrule the decision of another panel, the *Lambert* majority applied *White* and decided the case on the basis that the application to reopen was a part of direct review.[75] A concurring opinion rejected some of the analysis of the majority but acknowledged that under *White* an application for reopening an appeal from a judgment of a conviction is part of the direct appellate review process as opposed to collateral review.[76]

A petition for rehearing *en banc* has been filed in the *Lambert* case, and the court has called for a response to the petition.[77] In the absence of clear guid-

---

**66.** *Id.* at 750–51 n. 1.

**67.** *Id.*

**68.** *Id.*

**69.** *Lambert,* 81 Fed.Appx. 1.

**70.** 28 U.S.C. § 2244(d).

**71.** *Lambert,* 81 Fed.Appx. at 2–3.

**72.** *Id.* at 9.

**73.** *Id.* at 8–9.

**74.** *Id.* at 8.

**75.** *Id.* at 9.

**76.** *Id.* at 11.

**77.** Case No. 01–3422, Docket of the United States Court of Appeals for the Sixth Circuit, available at http://156.125.5.91/cgi–bin/reports.pl?CASENUM=01–3422 (last visited

ance from the Supreme Court of Ohio on the question, the continuing viability of the rule in *White v. Schotten* remains uncertain.

### 5. The rationale for certification to the Supreme Court of Ohio

■ Strict adherence to the holding in *White* would compel this Court to grant a writ of habeas corpus conditioned upon the state's failure to reinstate Eads's direct appeal to assert his claims of ineffective assistance of appellate counsel with the representation of counsel. Under *White*, the application for reopening is part of the direct appeal process. As such, he would have the right to counsel on that application, which he did not have. This would constitute cause for his failure to meet the procedural requirements of the rule. Because he had no representation whatsoever, prejudice to him would be presumed.[78] This cause and prejudice would excuse his procedural default.

■ As stated above, however, the intermediate appellate courts in Ohio vehemently disagree with the holding in *White*, and the thinking within the Sixth Circuit on the continuing viability of that rule is in flux, as demonstrated by the *Lambert* decision. This question cries out for an answer from the Supreme Court of Ohio. For purposes of federal habeas procedural default analysis, "state courts are the final authority on state law," and "state statutes mean what the state courts say they mean."[79] This Court is certifying the case to the Supreme Court of Ohio under Supreme Court Rule of Practice XVIII in the hope that the Supreme Court will definitively tell the federal courts whether an

application to reopen is part of the direct appeal or part of postconviction relief.

In the event that the Supreme Court does decide to answer the questions certified in this case, this Court offers the following observations that may be of interest to that Court.

First, it may very well be that a proceeding under Ohio Rule of Appellate Procedure 26(B) is both fish and fowl, depending upon the state of the proceeding. In other words, whether the proceeding constitutes direct appeal or post-conviction relief should hinge upon the extent to which the proceeding has progressed. Section (B)(7) of the rule expressly provides that "if the application is granted, the case shall proceed as on an initial appeal[.]" Section (B)(6)(a) requires appointment of counsel if the court grants the application and the applicant has no representation. After the granting of the application, therefore, all the indicia of direct appeal attach to the proceeding, and the proceeding should be considered direct appeal. Before the granting of the application, however, the direct appeal remains closed, and the application is more analogous to a request for relief after the judgment of conviction has become final.

This distinction eliminates the practical difficulties posed by labeling the entire proceeding "direct appeal" from the time of the filing of the application to reopen. If the proceeding is a direct appeal from the time of the application's filing, as the Sixth Circuit held in *White*, then the court of appeals is constitutionally required to appoint counsel at the time of the filing of the application. It follows that appointed counsel must have the opportunity to sup-

---

December 29, 2003) Response to petition for *en banc* rehearing filed on November 3, 2003.

**78.** *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052.

**79.** *Lambert,* 81 Fed.Appx. at 8, quoting *Hutchison v. Marshall,* 744 F.2d 44, 46 (6th Cir. 1984).

plement the application filed by the defendant pro se. This will protract the application to reopen process and require the State to bear the expense of appointing counsel regardless of the potential merit of the ineffective assistance claims asserted.

This distinction is not inconsistent with Supreme Court Rule of Practice II, Section 2(A)(4)(b). The intermediate Ohio appellate courts have cited this rule as the rationale for treating proceedings under Appellate Rule 26(B) as collateral review. The rule limits the delayed appeal procedures in the Supreme Court to "appeals on the merits" and excludes from those procedures "appeals involving post-conviction relief, including appeals brought pursuant to … App. R. 26(B)." Rather than requiring the conclusion that all appeals to the Supreme Court in proceedings under Appellate Rule 26(B) are not "direct appeals," the language of Rule II, Section 2(A)(4)(b) could be interpreted as a recognition that in all appeals after the judgment of conviction becomes final, a considerable amount of time has passed since both the underlying alleged criminal acts and the original trial. As a matter of policy, the opportunity for further delay in the proceedings should not be afforded.

Second, in answering the questions certified, the Supreme Court may wish to consider the practical problems created by the 90–day time limit imposed by Appellate Rule 26(B)(1). To be timely, the application must be filed before the conclusion of the direct appeal to the Supreme Court. Under Supreme Court Rule of Practice II, Section 2(A)(1)(a), the defendant has 45 days from the entry of judgment by the court of appeals to file his notice of appeal and memorandum in support of jurisdiction. Rule of Practice III, Section 2(A) gives the State 30 days after the filing of the notice and memorandum

in support to file a memorandum in response. Under Appellate Rule 26(B)(1), the application to reopen must be filed 15 days thereafter, within 90 days of the journalization of the judgment of the court of appeals. Although the Supreme Court expeditiously decides whether to hear the merits of criminal appeals, those decisions typically do not come within 15 days of the filing of the state's memorandum in response. And, if the Court does decide to hear the merits, the time for briefing, oral argument, and opinion will take the direct appeal well beyond the 90–day time limit of Appellate Rule 26(B)(1). In virtually every case, therefore, a timely application must be filed before the Supreme Court enters judgment in the direct appeal.

As a result, most if not all applications to reopen are filed late. Ohio law does not require appellate counsel to argue their own ineffectiveness in appeals to the Supreme Court.[80] It is unrealistic to assume, therefore, that appellate counsel will discuss possible ineffective assistance claims with their clients before proceedings conclude in the Supreme Court. It is likewise unrealistic to expect a criminal defendant to be second guessing his appellate counsel and to be independently preparing an application to reopen before the Supreme Court's judgment. The process of evaluating the potential for ineffective assistance of counsel claims and preparing an application does not begin until after the Supreme Court affirms the conviction and, in all likelihood, after the convicted defendant is incarcerated.

Under the current time limitation, it would seem that courts of appeals should be reluctant to deny applications made within a reasonable time after the conclusion of the direct appeal in the Supreme Court on timeliness grounds without care-

---

80. *State v. Hutton,* 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956–57 (2003).

ful consideration of the merits of the claims asserted under the "genuine" issue standard of Appellate Rule 26(B)(2)(5). If an application contains claims presenting a genuine issue of deprivation of effective appellate counsel and is filed within a reasonable time after the Supreme Court's affirmance of the conviction, a court of appeals should not deny the application as untimely merely because it took an unrepresented defendant time beyond the 90–day limit to develop such claims. Put another way, the lack of counsel should satisfy the "good cause for untimely filing" requirement of Appellate Rule 26(B)(2)(b) in those situations.

## IV.  Conclusion

Based on the foregoing, the Court will certify the following two questions to the Supreme Court of Ohio under Supreme Court Rule of Practice XVIII:

(1) Is an application to reopen an appeal under Ohio Rule of Appellate Procedure 26(B) part of the direct appeal from a judgment of conviction?

(2) If so, does the application become part of the direct appeal at the time of its filing or only upon the granting of the application?

The Court will issue a separate certification order in the format required by that rule.

IT IS SO ORDERED.

## ADDENDUM A

**RULE 26(B)—Application for Reopening**

**(B) Application for reopening.**  (1) A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel.  An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

(2) An application for reopening shall contain all of the following:

(a) The appellate case number in which reopening is sought and the trial court case number or numbers from which the appeal was taken;

(b) A showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment.

(c) One or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation;

(d) A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record;

(e) Any parts of the record available to the applicant and all supplemental affidavits upon which the applicant relies.

(3) The applicant shall furnish an additional copy of the application to the clerk of the court of appeals who shall serve it on the attorney for the prosecution.  The attorney for the prosecution, within thirty days from the filing of the application, may file and serve affidavits, parts of the record, and a memorandum of law in opposition to the application.

(4) An application for reopening and an opposing memorandum shall not exceed ten pages, exclusive of affidavits and parts of the record. Oral argument of an application for reopening shall not be permitted except at the request of the court.

(5) An application for reopening shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal.

(6) If the court denies the application, it shall state in the entry the reasons for denial. If the court grants the application, it shall do both of the following:

(a) appoint counsel to represent the applicant if the applicant is indigent and not currently represented;

(b) impose conditions, if any, necessary to preserve the status quo during pendency of the reopened appeal.

The clerk shall serve notice of journalization of the entry on the parties and, if the application is granted, on the clerk of the trial court.

(7) If the application is granted, the case shall proceed as on an initial appeal in accordance with these rules except that the court may limit its review to those assignments of error and arguments not previously considered. The time limits for preparation and transmission of the record pursuant to App. R. 9 and 10 shall run from journalization of the entry granting the application. The parties shall address in their briefs the claim that representation by prior appellate counsel was deficient and that the applicant was prejudiced by that deficiency.

(8) If the court of appeals determines that an evidentiary hearing is necessary, the evidentiary hearing may be conducted by the court or referred to a magistrate.

(9) If the court finds that the performance of appellate counsel was deficient and the applicant was prejudiced by that deficiency, the court shall vacate its prior judgment and enter the appropriate judgment. If the court does not so find, the court shall issue an order confirming its prior judgment.